[Civ. No. 30487. Second Dist., Div. One. Mar. 3, 1967.]

WARRACK MEDICAL CENTER HOSPITAL, Plaintiff and Respondent, v. CALIFORNIA STATE BOARD OF PHARMACY, Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Defendant and Appellant.

Musick, Peeler & Garrett and Bruce A. Bevan, Jr., for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a peremptory writ of mandate which, in effect, ordered the defendant to issue to plaintiff a permit to operate and conduct a hospital pharmacy in the Warrack Hospital in Santa Rosa, California.

On or about June 29, 1965, Warrack Medical Center Hospital, a corporation (sometimes hereafter referred to as Warrack) filed a petition for a writ of mandate in Los Angeles County requesting that the State Board of Pharmacy (sometimes hereafter referred to as Board) be ordered to grant it a permit to conduct a pharmacy. The Board filed its answer and a hearing was held. The facts are undisputed and are as set

forth in the findings of the court and with the conclusions of law are, in part, as follows:

"1.1 'Respondent is the California State Board of Pharmacy which is a board within the Department of Professional and Vocational Standards of the government of the State of California. Said Board is responsible for the enforcement and administration of the laws of the State of California relating to pharmacies which laws are set forth in Division 2, Chapter 9 of the Business and Professions Code.'

"1.2 'At all times mentioned herein, petitioner was and is a corporation duly organized and existing under the laws of the State of California.'

"1.3 'Petitioner owns and operates Warrack Hospital located in Santa Rosa, California, which is licensed as a hospital under Division 2, Chapter 2 of the Health and Safety Code (Sections 1400, et seq.).'

"1.4 'On or about April 13, 1965, Petitioner applied to said Board for a permit to operate a pharmacy at said Hospital.'

"1.5 'Said pharmacy laws authorize said Board to issue a permit to conduct a pharmacy not only to a natural person but also to a firm, association, partnership and corporation.'

"1.6 'On April 29, 1965, at San Francisco, California, said Board refused to issue to Petitioner such a permit on the sole . . . ground that some of Petitioner's shareholders and officers were physicians and surgeons licensed under Chapter 5, Division 2 of the Business and Professions Code. Petitioner otherwise complied with all requirements of said Board for the issuance of a pharmacy permit.'

"1.7 'On May 18, 1965, at Palm Springs, said Board reconsidered said application but denied the same on the same grounds.'

"1.8 'Business and Professions Code, Section 4080.5 enacted and effective in 1963 provides:

" ' "The board shall not issue any new permit to conduct a pharmacy to a person who is licensed under Chapter 5 (commencing with Section 2000 of this division.)" ' '

"1.9 'Chapter 5 (Sections 2000, et seq.) of the Code provides for the licensing of physicians and surgeons to practice medicine in the State of California. Only a natural person may be so licensed to practice medicine. Section 2006 of said Chapter provides:

" ' "The term 'person' means a natural person when a right, privilege, or power is conferred by this chapter upon a person." '

"1.10 'Petitioner, a corporation, is not a natural person and is not "a person who is licensed under Chapter 5" within the meaning of Section 4080.5.'

"1.11 'In the proceeding by which said Board so refused to grant said permit, a hearing was not required to be given Petitioner, evidence was not required to be taken.'

"II. The following facts were stipulated to by the parties ('STIPULATION OF FACT' (Court's Exh. 1)), the Stipulation was accepted by the Court and therefore the facts accepted as true:

" ' 'In order to avoid any issue of fact arising as a result of the denial of the allegations of paragraph 4 of the Petition for Writ of Mandate, Petitioner and Respondent hereby stipulate as follows:

" '1. There are 62,240⅓ shares of the stock of Petitioner outstanding.

" '2. There are 3,167⅓ of such shares owned directly by 38 physicians and surgeons licensed under Chapter 5, Division II, of the Business and Professions Code. The largest single such shareholder holds 276⅓ shares. Thus, approximately 5% of the shares of Petitioner are owned directly by licensed physicians and surgeons.

" '3. There are 37,420 shares of Petitioner (or about 60% of the outstanding stock) owned by Katella Community Hospital, a partnership. The partnership interests in Katella Community Hospital are as follows:

" '(a) Hospital Building Company holds 27½% of the partnership interests;

" '(b) Sharpe Medical Management Corporation owns 4% of the partnership interests; and

" '(c) Doctor's Participating Company, a corporation, owns 68½% of said partnership interests.

" 'No licensed physician and surgeon holds any interest in Hospital Building Company or in Sharpe Management Corporation. The only stock of Doctor's Participating Company owned by a licensed physician and surgeon is that held by L. H. Glaser, M.D., who is neither an officer or director of Petitioner nor a member of its staff. Dr. Glaser owns 100% of the stock of Doctor's Participating Company.

" '4. Therefore, the indirect holding of Dr. Glaser in

Katella Community Hospital is 41.1% (68.5% of 60% equals 41.1%).

" '5. Therefore, the total direct and indirect ownership of Petitioner by licensed physicians and surgeons is 46.1%, consisting of said 5% direct ownership and 41.1% ownership by Dr. Glaser.

" 'There are no questions as to matters of fact essential to the determination of the Petition within the meaning of Section 1090 of the Code of Civil Procedure.'

"III. The Court additionally finds true:

"III.1 That there is no plain or speedy or adequate remedy in the ordinary course of law available to Petitioner other than said Petition.

"IV. The Court makes no findings upon Paragraph 12 of the Petition. The constitutionality or unconstitutionality of Section 4080.5 Business and Professions Code is not herein involved.

"From the foregoing facts, the Court makes the following Conclusions of Law:

"CONCLUSIONS OF LAW

"I. Petitioner is entitled to have issued unto it, and a duty is specially imposed by law upon Respondent to issue unto Petitioner, a Permit under the Pharmacy Law (Division 2, Chapter 9, §§ 4000 to 4416 B. & P. Code) to operate and conduct a Hospital Pharmacy (§ 4435.1 B. & P. Code), in the Warrack Hospital, Santa Rosa, California.

"II. Section 4080.5, B. & P. Code does not prohibit, nor is Respondent empowered thereunder to refuse to issue a Permit to Petitioner to operate and conduct a Hospital Pharmacy in the Warrack Hospital, Santa Rosa, California.

"III. Section 654, B. & P. Code does not prohibit, nor is Respondent empowered thereunder to refuse to issue to Petitioner a Hospital Pharmacy Permit to operate and conduct a Hospital Pharmacy in the said Warrack Hospital, Santa Rosa, California.

"IV. A Peremptory Writ of Mandate should issue, directed to respondent, commanding it to issue unto Petitioner a Permit under the Pharmacy Law to operate and conduct a Hospital Pharmacy in the Warrack Hospital, Santa Rosa, California.

"V. Petitioner is entitled to have and recover of and from Respondent its costs and disbursements herein."

■ The question is does section 4080.5, Business and Professions Code,[1] compel the Board to deny a pharmacy permit to a corporation the stock of which is owned by licensees doctors of medicine.

Appellant justifies its denial of a pharmacy permit under the theory that the Board "shall not issue any new permit to conduct a pharmacy to a person who is licensed under Chapter 5 . . ." At the same time, appellant admits that "[o]nly a natural person may be so licensed to practice medicine. . . ." and that "Petitioner, a corporation, is not a natural person and is not 'a person who is licensed under Chapter 5' within the meaning of Section 4080.5." (Findings 1.9 and 1.10.)

Appellant asserts however that it has "the power to look behind the facade of corporate applicants and inquire into the qualifications of the owners of the corporation."

It is further asserted by the Board that the purpose of section 4081[2] was to allow the Board the power to determine whether any nonnatural applicant for a permit was beneficially owned by persons who are ineligible for a permit under section 4080.5, Business and Professions Code. The Legislature could have prohibited or barred corporate applicants which were "beneficially owned" by a person or persons licensed by chapter 5, but it did not expressly do so. The

---

[1]Section 4080.5 of the Business and Professions Code provides as follows:
"The board shall not issue any new permit to conduct a pharmacy to a person who is licensed under Chapter 5 (commencing with Section 2000) of this division."

[2]Section 4081 of the Business and Professions Code provides as follows:
"Pharmacy permits; application, issuances and renewal; nontransferability; effect
"(a) Each application to conduct a pharmacy shall be made on a form furnished by the board, and shall state the name, address, usual occupation, and professional qualifications, if any, of the applicant. If the applicant is other than a natural person, the application shall state such information as to each person beneficially interested therein.
"(b) As used in this section, and subject to the provisions of subdivision (c) of this section, the term 'person beneficially interested' means and includes:
"(1) If the applicant is a partnership or other unincorporated association, each partner or member.
"(2) If the applicant is a corporation, each of its officers, directors and stockholders, provided that no natural person shall be deemed to be beneficially interested in a non-profit corporation.
"(c) In any case where the application is a partnership or other unincorporated association, or is a corporation, and where the number of partners, members or stockholders, as the case may be, exceeds five, the application shall so state, and shall further state such information as to

legislative history of section 4081 demonstrates that it was not intended thereby to be a grant of power to the Board to police the provisions of section 4080.5. The doctrine of piercing the corporate veil repeatedly in the past has been brought into play to prevent fraud, but admittedly this is not such a case.

In any event, it would seem from the face of the record that Warrack seeks only to operate a hospital pharmacy, and under section 654, Business and Professions Code,[3] such a facility is exempt.

On this date this court has filed its opinion in *Magan Medical Clinic* v. *California State Board of Medical Examiners, post,* p. 124 [57 Cal.Rptr. 256] which is dispositive of the issue presented in the case at hand.

For the reasons herein stated, and for the reasons stated in *Magan,* the judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

each of the five partners, members or stockholders who own the five largest interests in the applicant entity. Upon request by the executive secretary, the applicant shall furnish the board with such information as to partners, members or stockholders not named in the application, or shall refer the board to an appropriate source of such information.

" (d) Upon the approval of such application by the board and paying the fee required by this chapter for each pharmacy, the executive secretary of the board shall issue a permit to conduct a pharmacy under the provisions of Section 4080, if all of the provisions of this chapter have been complied with. Any other provision of law notwithstanding, such permit shall authorize the holder to conduct a pharmacy and to sell and dispense prophylactics, hypodermics, hypnotics, and poisons. The permit shall be renewed annually on or before November 1st of each year and shall not be transferable, and any change in the beneficial ownership interest of such pharmacy shall be reported within 30 days thereafter upon a form to be furnished by the board."

[3] Section 654 of the Business and Professions Code provides:

Prohibited arrangements between opticians or pharmacists and medical licensees:

"No person licensed under Chapter 5 (commencing with Section 2000) of this division may have any membership, proprietary interest or co-ownership in any form in or with any person licensed under Chapter 5.5 (commencing with Section 2550) of this division to whom patients, clients or customers are referred or any profit-sharing arrangements. Nor, after June 1, 1967, shall any person licensed under Chapter 5 of this division have any membership, proprietary interest, or co-ownership in any form in or with a pharmacy regulated by Chapter 9 (commencing with Section 4000) of this code, except that this shall not apply to a hospital pharmacy nor prohibit ownership in the building in which a pharmacy is located.

" 'Proprietary interest' does not include ownership of a building where space is leased to a pharmacy at the prevailing rate, either under a straight lease or a percentage of the gross income of the pharmacy."